IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

ALEXANDER CONTRACTING COMPNAY, INC. and HYDRO-GREEN, LLC, *

Plaintiffs, *

vs. * CASE NO. 4:13-CV-449 (CDL)

JACOBS ENGINEERING GROUP, INC. f/k/a JORDAN, JONES & GOULDING, INC., *

Defendant. *

---

O R D E R

After the jury returned a verdict in favor of Plaintiffs Alexander Contracting Company, Inc. and Hydro-Green, LLC, Defendant Jacobs Engineering Group, Inc. renewed its motion for judgment as a matter of law that it previously made during trial. For the reasons discussed below, the Court finds that sufficient evidence was introduced at trial to support the jury verdict. Accordingly, Jacobs's renewed motion is denied. (ECF Nos. 136, 138).

STANDARD

To grant a motion for judgment as a matter of law after a jury has returned a verdict, the Court must find that the jury verdict lacked any legally sufficient evidentiary basis. *See* Fed. R. Civ. P. 50(a) and (b). "[A] district court's proper analysis [for a Rule 50 motion] is squarely and narrowly focused

on the sufficiency of the evidence." *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007). In determining whether the evidence is sufficient, "the court must draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

BACKGROUND

This action arose from a dispute involving a construction project at Fort Benning, an Army base in Columbus, Georgia. The United States Army Corps of Engineers contracted with Sauer, Inc. to build roads upon which large trucks hauling tanks and other heavy equipment (referred to as "heavy equipment transport vehicles") would travel. Sauer hired Jacobs, an engineering firm, to design the roads. Sauer solicited subcontractor bids, and Alexander ultimately won the contract. During the bid process, Alexander received designs from Jacobs. Alexander used the designs to calculate its bid. The designs represented that the pavement should be 4.5 inches thick.

Sauer later replaced Alexander with Hydro-Green, a construction company owned by a disabled veteran, in an attempt to meet a disabled veteran quota. Under this new arrangement, Hydro-Green was a subcontractor and Hydro-Green hired Alexander as its sub-subcontractor. Hydro-Green handled the administrative matters and insurance while Alexander performed most of the construction work.

Since Hydro-Green came into the project late, it did not directly review Jacobs's designs. Instead, Hydro-Green CEO Coleman Reeves testified that he adopted Alexander's contract price, which Alexander calculated based on Jacobs's designs. Trial Tr. vol. I 104:6-10, ECF No. 131.

Plaintiffs presented evidence that after they entered into contracts with Sauer, they learned that they would have to pave six-inch thick roads, instead of 4.5-inch thick roads. The pavement had to be thicker than Jacobs originally represented because Jacobs's initial designs did not account for the Corps of Engineers' instruction to pave roads that could withstand traffic from ten heavy equipment transport vehicles per day. Trial Tr. Vol II 171:2-6, ECF No. 132. Alexander and Hydro-Green presented evidence that together they spent approximately $500,000 building thicker roads. When Sauer did not compensate them for the increased cost of the thicker pavement, they filed this action against Jacobs and Sauer to recover their damages caused by the change in the design from 4.5 inches to 6 inches.

Plaintiffs settled their claims against Sauer prior to trial and proceeded to trial against Jacobs for negligent misrepresentation. At trial, Alexander presented evidence that Jacobs knew that the road needed to be more than 4.5 inches thick but negligently represented to Alexander that 4.5 inches of pavement was adequate. Alexander also presented evidence

that it relied to its detriment on Jacobs's representation. Jacobs engineer Joe Johnson testified that he knew that the Corps of Engineers required that the road be able to support ten heavy equipment transport vehicles per day, but he found that requirement "odd" and essentially ignored it when he told Alexander to base its bid on a thickness of 4.5 inches. *Id.* at 32:8-17. Jacobs introduced evidence that before Alexander entered its contract with Sauer, Alexander was courtesy copied on an email from the Corps of Engineers to Sauer and Jacobs stating that the design plans were unacceptable because the pavement was not thick enough to accommodate ten transport vehicles per day. The president of Alexander, Lon Alexander, testified that the company did not know how much thicker the pavement would have to be to withstand ten trips per day, or how much it would cost to pave thicker roads. Alexander simply relied on Jacobs's representation that the roads were to be 4.5 inches thick when it entered into the contract with Sauer to pave the roads.

The jury found in favor of Plaintiffs, and awarded Alexander $357,664.95 and Hydro-Green $114,311.68 in damages. Jacobs now asks the Court to overturn the jury's verdict and enter judgment in Jacobs's favor.

DISCUSSION

Jacobs argues that it is entitled to judgment as a matter of law because: (1) Alexander and Hydro-Green's claims are for *professional* negligence and they did not present evidence that Jacobs deviated from the standard of care required of similarly situated professionals, (2) Alexander did not reasonably rely on Jacobs's representations, and (3) Hydro-Green was not a foreseeable person and did not rely on Jacobs's representations. The Court addresses each argument in turn.

**I. Evidence of Professional Negligence**

Jacobs contends that Plaintiffs assert claims for *professional* negligence and failed to present proof of *professional* negligence. Plaintiffs respond that they have alleged a claim for negligent misrepresentation, not professional negligence, and that they presented sufficient evidence to support that claim. The Court agrees with Plaintiffs.

The law in Georgia is simple: just because a negligence claim is asserted against a professional does not automatically make it a claim for *professional* negligence, which typically requires expert testimony to sustain. *Ambrose v. Saint Joseph's Hosp. of Atlanta, Inc.*, 325 Ga. App. 557, 558-59, 754 S.E.2d 135, 137 (2014) (emphasis added) ("Whether an action alleges professional negligence or simple negligence depends on whether

the professional's alleged negligence required the exercise of *professional judgment and skill*"). Expert testimony is not required for claims involving ordinary negligence. *McGarity v. Hart Elec. Membership Corp.*, 307 Ga. App. 739, 746, 706 S.E.2d 676, 682 (2011) ("[S]ome acts performed by professionals are acts of simple negligence which would not require proof by expert evidence."). Professional negligence claims, on the other hand, allege that the professional deviated from the standard of care applicable to similarly situated professionals, and expert testimony as to the standard of care and deviation from it is generally required. *Botes v. Weintraub*, 463 F. App'x 879, 885 (11th Cir. 2012) (per curiam) ("Wherever it is necessary to establish the parameters of acceptable professional conduct in order to prove negligence or breach for failure to perform in a workmanlike manner, the case must be deemed a *professional* malpractice case."); *Roebuck v. Smith*, 204 Ga. App. 20, 21, 418 S.E.2d 165, 166 (1992) (defining professional malpractice as involving "highly specialized expert knowledge with respect to which a layman can have no knowledge at all"); *Razete v. Preferred Research, Inc.*, 197 Ga. App. 69, 69, 397 S.E.2d 489, 490 (1990) ("[W]here . . . the plaintiff can prove negligence . . . without proof of a customary procedure and violation of it, the case is not a professional malpractice case.").

Here, Plaintiffs did not claim that Jacobs failed to exercise *professional* judgment or skill. At trial, the engineer who "essentially ran the office for Jacobs in Columbus," Joe Johnson, testified that he was aware that the Corp of Engineers instructed bidders—including Jacobs (via Sauer)—to design pavement thick enough to withstand traffic from ten heavy equipment transport vehicles per day. Trial Tr. vol. II 9:10-11. But he disregarded this instruction because he thought it was "odd." *Id.* at 32:8-17; *id.* at 44:18-45:1 (answering the following question in the affirmative: "You would agree with me that the way you came up with the 4-1/2 inches has nothing whatsoever to do with the government's statement that you should tell bidders to assume ten [transport vehicles]"); *id.* at 45:6-9. Moreover, the 4.5-inches representation was not based on engineering calculations. At trial, Johnson was asked: "When you came up with the 4.5-inch thickness, you weren't suggesting that that was sufficient to support ten [transport vehicles] a day." *Id.* at 48:14-21. Johnson responded: "That's correct, yes." *Id.* at 48:22 Instead of using engineering calculations to arrive at the 4.5-inch number, Johnson testified that he derived the number from a previous unrelated project. *Id.* at 45:14-47:2.

In sum, the issue before the jury was not whether Jacobs accurately performed its engineering calculations or designs.

Instead, the jury had to decide whether Jacobs followed the Corps' instructions. Jacobs's engineer clearly testified that he did not follow the Corps of Engineers' instructions. "This is not a case as to which a layman can have no knowledge at all, and the court and jury must be dependent on expert evidence." *Roebuck*, 204 Ga. App. at 21, 418 S.E.2d at 167. The Court, therefore, concludes that Plaintiffs' claims were not for professional negligence and that Plaintiffs were not required to introduce evidence that Jacobs committed professional negligence.

## II. The Reasonableness of Alexander's Reliance

Jacobs also contends that Alexander did not justifiably rely on Jacobs's representations because Alexander knew that the design for the pavement would change and entered into the contract anyway. William Holle, the project manager for Alexander, testified that Alexander received an email about two months before signing its contract with Sauer notifying Alexander that Jacobs's original pavement design could accommodate only two, instead of ten, heavy equipment transport vehicles per day. Trial Tr. vol. II 156:7-13. Based on this email, Holle testified that he "could reasonably expect that . . . there was going to be a change and it would cost more money" but that he "didn't know what" that change would be. *Id.* at 157:25-158:19. Jacobs argues that the email put Alexander on

notice that the pavement design was going to change. Jacobs contends that Alexander failed to exercise due diligence when it did not follow up with Sauer and Jacobs on the impact this change might have on the contract price.

Evidence was also introduced, however, that Alexander was unaware what effect, if any, the change from two to ten heavy equipment transport vehicles would have on the pavement thickness. Holle testified that Alexander was unsure how much thicker the pavement needed to be to accommodate ten transport vehicles per day. *Id.* at 173:4-13. Holle also testified that Alexander did not know that the pavement would have to be six inches thick, instead of 4.5 inches thick, until after Alexander entered its contract with Sauer. *Id.* at 171:2-6. The president of Alexander Contracting, Lon Alexander, also testified that he did not know how much thicker the pavement would have to be to accommodate the increased traffic from transport vehicles. Trial Tr. vol. I 59:1-7.

The Court acknowledges—as it did when Jacobs made its motion for judgment as a matter of law at trial—that conflicting evidence exists on the reasonableness of Alexander's reliance. Such conflicts are to be resolved by a jury and not by this Court as a matter of law. The jury decided that Alexander justifiably relied on Jacobs's representations, and the record contains sufficient evidence to support that conclusion.

The Court notes that Jacobs makes two new arguments in its post-trial motion for judgment as a matter of law that it did not raise in its motion for judgment as a matter of law at trial. First, Jacobs argues that its designs did not misrepresent anything because Jacobs never claimed that the original pavement design would sustain traffic from ten transport vehicles per day. Second, Jacobs argues that its designs were merely "opinions" that cannot give rise to a misrepresentation claim. Given Jacobs's failure to make either of these arguments in its motion for judgment as a matter of law at trial, the Court is not obligated to consider them now. *U.S. Sec. & Exch. Comm'n v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 813 (11th Cir. 2015) ("[A] party may renew its Rule 50(a) motion after trial under Rule 50(b), but a party cannot assert grounds in the renewed motion that it did not raise in the earlier motion.").

Even if the Court were to reach the merits of these arguments, the Court finds them unpersuasive. Jacobs's engineer, Joe Johnson, testified that he knew that subcontractors like Alexander would rely on his designs. Trial Tr. vol. II 44:5-12. He also testified that he knew that the Corps of Engineers instructed bidders to base their pavement designs on traffic from ten transport vehicles per day. *Id.* at 45:2-9. Finally, he testified that Jacobs never informed

Alexander that it disregarded the Corps' instructions. *Id.* at 47:3-9. The president of Alexander Contracting testified that he believed the 4.5 inches took into account all of the government's instructions. Trial Tr. vol. I 57:8-58:1. Sufficient evidence exists for a reasonable jury to conclude that Jacobs made false representations regarding the pavement thickness and that Plaintiffs reasonably and detrimentally relied on that representation.

**III. The Reasonableness of Hydro-Green's Reliance**

Jacobs argues that Hydro-Green did not present evidence at trial that would allow a reasonable juror to conclude (1) that Hydro-Green was a person who Jacobs would reasonably foresee would rely on its representations or (2) that Hydro-Green reasonably relied on Jacobs's representations. *See Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1029 (11th Cir. 2003) (per curiam) (explaining the elements of a negligent misrepresentation claim under Georgia law). The Court disagrees.

Jacobs argues that Hydro-Green is not a foreseeable person because Hydro-Green did not exist at the time Jacobs made its representations to Alexander and therefore Jacobs was not "actually aware" that Hydro-Green would rely on its

representations.[1] Mem. of Law in Supp. of Mot. for J. as a Matter of Law 17, ECF No. 138-2. But Hydro-Green was not required to prove that Jacobs knew Hydro-Green specifically would rely on its representations. *Ellis*, 318 F.3d at 1029 (citing *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 426, 479 S.E.2d 727, 729 (1997)) ("[T]he tort of negligent misrepresentation consists of . . . the defendant's negligent supply of false information to foreseeable persons, *known or unknown* . . . .") (emphasis added). Hydro-Green only had to prove that it was within the class of persons for whom the information was intended. *See Badische Corp. v. Caylor*, 257 Ga. 131, 133, 356 S.E.2d 198, 200 (1987) ("[L]iabilty is limited to [the] limited class of persons for whom the information was intended, either directly or indirectly."). Sufficient evidence exists for the jury to have concluded that Hydro-Green was a subcontractor and that Jacobs knew that subcontractors would rely on its representations. Trial Tr. vol. II 22:6-11.

Jacobs also argues that Hydro-Green did not rely on its representations because Hydro-Green came into the construction project late and did not review Jacobs's designs. In essence, Jacobs contends that Hydro-Green had to directly rely on its representations. But Georgia law permits a plaintiff to prove

---

[1] The parties presented conflicting evidence at trial regarding whether Hydro-Green existed when Jacobs initially represented the pavement thickness to Alexander.

negligent misrepresentation using evidence of either direct or indirect reliance. *See Robert & Co. Assocs. v. Rhodes-Haverty P'ship*, 250 Ga. 680, 681, 300 S.E.2d 503, 504 (1983) ("This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly."). Indirect reliance occurs when a plaintiff relies on representations the defendant made to an intermediary. *See, e.g.*, *Squish La Fish, Inc. v. Thomco Specialty Prods., Inc.*, 149 F.3d 1288, 1291 (11th Cir. 1998) (reversing a district court for determining that a plaintiff had not sufficiently relied on the defendant's misrepresentations because the misrepresentation were made to an intermediary rather than the plaintiff directly).

Hydro-Green presented evidence that Jacobs gave designs to Alexander during the bid process and that Alexander used Jacobs's drawings to calculate its contract price. Trial Tr. vol. I 59:8-10 (testifying that Jacobs instructed Alexander to build 4.5-inch thick pavement). Hydro-Green CEO Coleman Reeves testified that Hydro-Green relied on Alexander's contract price to form its own price. *Id.* at 104:6-10. Based on this evidence, a reasonable jury could conclude that Hydro-Green relied on the representations Jacobs made to Alexander.[2]

---

[2] Jacobs also argues that Hydro-Green failed to prove the elements of justifiable reliance or damages because it did not perform the work on

CONCLUSION

Sufficient evidence was presented at trial to support the jury verdict. Therefore, Jacobs's motion for judgment as a matter of law (ECF Nos. 136, 138) is denied.

IT IS SO ORDERED, this 30th day of July, 2015.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

the construction project itself. The Court is unpersuaded by this argument. Hydro-Green presented evidence that because of its reasonable reliance on the misrepresentation as to the thickness of the road, it had to compensate its sub-subcontractor (Alexander) for the additional cost of paving thicker roads.